JAMES KALIOPULUS *v.* CHARLES M. LUMM ET AL.
[No. 39, January Term, 1928.]

*Decided April 5th, 1928.*

The cause was argued before BOND, C. J., PATTISON, URNER, ADKINS, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*Alexander Armstrong* and *John Henry Lewin,* with whom were *Scott M. Wolfinger* and *Armstrong, Machen & Allen* on the brief, for the appellant.

*Daniel W. Doub,* with whom was *J. Lloyd Harshman* on the brief, for the appellees.

PARKE, J., delivered the opinion of the Court.

James Kaliopulus, the appellant, conducted an eating-house in Hagerstown, Maryland, when, on May 13th, 1921, he sold the business, with all its fixtures and equipment, and assigned his unexpired term in the building where the restaurant was carried on, to Charles E. Lumm and Ida K. Lumm, his wife, the appellees, for thirty thousand dollars. The eating-house was located on the premises known as No. 76 Washington Street, and was called the "Maryland Dining Room." The buyers engaged to pay one thousand dollars on the making of the contract, fourteen thousand dollars on or before the first of June following, and to give for the residue of fifteen thousand dollars their thirty equal joint and several promissory notes, dated, and bearing interest from, June 1st, 1921; and the first maturing on July 1st, 1921, and thence one maturing successively on the first of every month thereafter until all had so become due, with the right of the buyers to anticipate the payment of all or any part of these notes.

The only other provisions of the contract of sale that need be stated are those with which this appeal is concerned, and they are found in the following paragraph:

"And it is hereby agreed and understood by and between the parties hereto, and a part of the consideration of the purchase price aforesaid, that the said party of the first part is not to enter into, conduct or finance any restaurant or dining room business within the corporate limits of Hagerstown, Maryland, for a period of ten years from June 1st, 1921, provided, however, that the said party of the first part may continue to conduct as heretofore the Maryland Cafeteria situate on the west side of the Public Square in Hagerstown, Maryland, as a cafeteria only, and shall not at any time within said period of ten years conduct or have the same conducted as a restaurant or dining room."

The seller delivered the subject matter of the sale, and the buyers paid the price agreed, and have since June 1st, 1921, carried on the business thus acquired. The bill of complaint set forth these facts, and further alleged that the seller had broken his contract in that on or about the first of April, 1922, he had entered into, conducted and helped to finance a certain restaurant or dining room in Hagerstown, known as the Washington Restaurant, adjoining which he operates a hotel. The bill of complaint, also, charged that the Washington Restaurant is a corporation which was formed by several of seller's former employees and waiters in the Maryland Dining Room, but at the instance and with the cooperation and the financial and other support of the seller and as a mere cover or blind to conceal his interest; that the seller for some time past had been, and was then, "financing, managing, supervising and in reality operating the said Washington Restaurant" on the same street with, and within a distance of about three hundred feet from, the Maryland Dining Room; and that, by reason of the seller's connection with and management of the Washington Restaurant, the business bought by the appellees of the appellant had been greatly and so damaged that the buyers were left without adequate remedy at law.

The specific relief sought by the buyers was that the seller be required to discover what was his official connection with the Washington Restaurant; whether or not he had any of its capital stock or had loaned it any money, and what interest he had as manager or in any other capacity in the conduct of the Washington Restaurant; and that the seller be enjoined from entering into, financing, managing or supervising or having any other connection with the said Washington Restaurant, or any other restaurant in the City of Hagerstown, Maryland, for the period of ten years from June 1st, 1921.

The averments of the bill of complaint upon which the complainants' equity depended have been stated in the language of the bill of complaint, so that their significance in relation to one another may best appear, since the demurrer

of the appellant admits all the well pleaded facts. The appellant does not deny that the bill of complaint charges him with a breach of contract for which, under the circumstances, the complainants would be entitled to relief in equity, but his demurrer raises three objections which are designed to bar the buyers' relief under the present bill of complaint. The first point is that exhibits are not filed with the bill of complaint showing that the appellees have title to the Maryland Dining Room; and the second is that necessary parties have not been made defendants; and the third is laches. The first two points grow out of the pleadings and are not a bar to relief but simply to the pending procedure, while the third point would prevent any redress on the ground that it was lost by delay.

1. The allegations of the bill of complaint are sufficiently precise and specific to show the sale and purchase of the eating-house and the assignment of the residue of the term of the lease of the premises wherein the business was conducted; and the payment by the buyers of the contract price; and the delivery by the seller to the buyers of the premises and the business where they "have been conducting the same as a restaurant and dining room ever since"; and the breach by the seller of his covenant whereby "their business has been greatly damaged and reduced and the volume of business greatly decreased to their great injury and damage." It is clear that these averments, with the context, definitely state that the complainants are acting in their own proprietary capacity and negative any reasonable inference that their possession and operation of the Maryland Dining Room are not as owners deriving their title through their purchase and assignment from the appellant.

Under these circumstances, the right of the buyers to enjoin the seller from the violation of his covenant depends primarily solely upon the instrument containing that broken covenant, which is only to be found in the original contract between the parties. It is true that the seller agreed by this contract "to execute and deliver to the said parties of the second part a good and sufficient deed of conveyance convey-

ing to the purchaser the goods, chattels and property herein sold, free and clear of all liens and encumbrances," upon the buyers making the cash payments agreed upon and making the delivery of the promissory notes for the rest of the purchase price. However, on the payment of the purchase price, the delivery of the goods and chattels and of the business, with its good will, the complete title in the personalty sold passed to the buyers and made the execution and delivery of a deed of bargain and sale a supererogation. Nor would the production of the assignment of the leasehold estate have shown any present interest in the premises at the time of the filing of the bill of complaint by virtue of the lease which the seller had at the time of the contract, since the term thereby created had expired on April 1st, 1926; and the subsequent occupancy of the same premises by the buyers would be under the owner of the reversion. Furthermore, it is to be observed that the performance of the obligations of the covenant, which is alleged to have been violated by the seller, did not depend upon the condition that the covenantees should carry on the Maryland Dining Room at any particular place in Hagerstown or as owners or as tenants by a lease in writing of the premises occupied. *Venable's Real Property,* pp. 41, 42. It is enough that the complainants were in possession of the premises and there conducting the restaurant; whether the lease be in writing or oral is immaterial. The covenantees were engaged in keeping an eating-house on the original site, and so it follows that their right to proceed against the covenantor by injunction did not depend upon the execution of a conveyance, an assignment, or a lease to them in writing, but upon a breach of a written contract, and since this contract was produced and filed as a part of the bill of complaint, the appellees have complied with the requirement that in applications for an injunction there should generally be filed by the plaintiff the papers or instruments of writing in his possession on which his equity rests. *Didier v. Merryman,* 114 Md. 434, 438; *Havre de Grace v. Lewis,* 127 Md. 367, 371; *Washington County Water Co. v. Hagerstown,*

36

116 Md. 497, 509; *Stinson v. Ellicott City etc. Co.,* 109 Md. 111, 116; *Miller's Equity Proc.,* secs 582, 583.

2. Another ground of demurrer is the nonjoinder of necessary parties defendant. The allegations in substance are that the Washington Restaurant is a corporation which was organized by the covenantor and some of his former employees and waiters as a cover under which he managed and operated an eating-house in breach of his covenant. If this be true, the corporation was the covenantor's conscious tool and bound by its notice of the original contract to refrain, with the covenantor, from a breach of the covenant. The negative covenant here is express, and its negative specific performance by injunction is no longer open to question against the covenantor nor, on principle, against a corporation with knowledge of its having been called into being to secure the covenantor's calculated breach of his obligation. *Powell v. Young,* 45 Md. 494, 499, 500; *Guerand v. Dandelet,* 32 Md. 561, 565-570; *Warfield v. Booth,* 33 Md. 63, 70; *Davis v. Barney,* 2 G. & J. 382; *Webb v. McCloskey,* 68 Md. 196, 201; *Armstrong v. Bitner,* 71 Md. 118; *Chenoweth v. Hoey,* 135 Md. 97, 104; *Chesapeake Co. v. Mt. Vernon Co.,* 107 Md. 528, 531-532; 2 *High on Injunctions* (4th Ed.), secs. 1168, 1171, 1172, 1173, 1177.

If the allegations of the bill of complaint be true, the corporation operating the Washington Restaurant is in wrongful competition with the appellees, and should be enjoined. The mere issuance of an injunction against the appellant would simply sever the appellant from all connection with the business and financial operations of the restaurant, which, because of its origin and purpose, would notwithstanding continue to be in wrongful business rivalry with the appellees. Furthermore, to determine if the corporation be a cover or blind as alleged, it will be necessary to probe and ascertain the actual relation between the appellant and the corporation. This relation is the principal issue, and on the allegations of the bill of complaint no decree would be adequate without the corporation be enjoined.

It is, however, a matter of no small difficulty in many instances to determine whether a person is a necessary party to an equity suit, and no general rule applicable to all cases can be stated. *Walter v. Riehl,* 38 Md. 211, 215, 216. It is not a decisive objection to its use that the granting of an injunction may incidentally cause loss to a third party by depriving it of the services, executive ability, or financial interest or aid of a defendant (*Nicholls v. Shelton,* 7 Beav. 42) ; and so a decree to this effect could be passed against the defendant alone, and, consequently, it must be said that the third party would not commonly be a necessary defendant. But here the third party is fictitious, since it is, in substance, none other than the defendant himself. The Washington Restaurant is alleged to have been called into being by the defendants as "a mere cover or blind to conceal his interest therein" and that "he has for some time past been and is now financing, managing and in realty (*sic*) operating the said Washington Restaurant." The corporation is, therefore, the fraudulent instrumentality behind which the defendant masks and carries on a competitive business for his personal gain. Although the guise is corporate, the actor is the defendant. So, where the facts alleged reveal the defendant and his corporate agency to be acting in unison in order to violate covertly the covenant of the defendant, equity will brush aside the corporate barrier, and, perceiving their substantial identification, will regard the two as constituting one person for the purpose of affording relief by way of injunction. Under the circumstances set forth, the corporation is in no accurate sense a third party, but is, in effect, the covenantor in disguise, and hence a person whose substantial rights are shown by the allegations to be necessarily involved, and must be passed upon, and may be injuriously affected by the injunction ; and if such a person is not brought in so as to have an opportunity to be heard and to have its rights adjudicated, without a multiplicity of suits, in the same litigation, no decree can effectually be made determining the principal issues. The special circumstances of this case, as well as the actual theory upon which the complaint is drawn, require

the making of the Washington Restaurant a party defendant, and the failure to do so constitutes a defect which can be reached by a demurrer to the bill of complaint before this court. See *Phelps' Jurid. Eq.*, secs. 38, 39; *Miller's Equity Proc.*, secs. 24, 73; 1 *Joyce on Injunctions*, sec. 374; *Guerand v. Dandelet*, 32 Md. 561, 565, 570 (instance of joinder); *Chesapeake Co. v. Mt. Vernon Co.*, 107 Md. 528, 531-532 (instance of joinder); *Fleckenstein Bros. Co. v. Fleckenstein*, 66 N. J. Eq. 252 (instance of joinder); *Lovejoy v. Ireland*, 17 Md. 525, 526; *Lucas v. McBlair*, 12 G. & J. 1, 16; *Carter v. First National Bank*, 128 Md. 581, 586; *Henderson v. Harper*, 127 Md. 429, 432; *Whitman v. United Surety Co.*, 110 Md. 421, 427; *Mishler v. Finch*, 104 Md. 182, 185-187; 2 *Machen on Corporations*, sec. 1089; *United States v. Lehigh Valley R. Co.*, 220 U. S. 257, 272-274; *Rowe Co. v. Rowe*, 154 Md. 599.

3. In *Robertson v. Mowell*, 66 Md. 530, at p. 539, Judge Miller, speaking for this court, said: "Authorities upon the subject of laches and lapse of time are almost innumerable, but the courts have wisely abstained from attempting to lay down any general or inflexible rule to govern all cases. As was said in *Glenn v. Hebb*, 17 Md. 260, when questions of this kind arise in courts of equity, it is a sound maxim that each case is to be determined according to its own facts. And this must be, for it is obvious that while it would be just and equitable to sustain such a defense in one case and under one state of circumstances, it would work gross wrong and injustice to sustain it in another where the circumstances are entirely different." See also *Warburton v. Davis*, 123 Md. 225, 231; *McCoy v. Poor*, 56 Md. 197, 204. The general rule for determining if the facts and circumstances of the particular case support a defense of laches is thus stated in *Demuth v. Old Town Bank*, 85 Md. 315, at pages 326, 327: "Strictly speaking, and using the term as it is understood in the law, laches is such neglect or omission to assert a right as, taken in conjunction with lapse of time more or less great, and other circumstances causing prejudice to an adverse party, operates as a bar in a court of equity. * * * Obviously, then, there

must be a legal duty to do some act, a failure to do that duty and attendant circumstances which cause *prejudice* to an adverse party before the doctrine can be successfully invoked. Mere lapse of time, without more, unless of sufficient duration to amount to and constitute the bar of the statute of limitations, will not be sufficient." *Hopper v. Brodie,* 134 Md. 290, 304; *Safe Deposit & Trust Co. v. Coyle,* 133 Md. 343, 351; *Roberto v. Catino,* 140 Md. 38, 43, 44; *Taylor v. Carroll,* 89 Md. 32, 36, 37; *Sinclair v. Auxiliary Realty Co.,* 99 Md. 223, 234; *Houck v. Houck,* 112 Md. 122, 133; *Hammersley v. Bell,* 134 Md. 172, 177. Compare *White v. Shaffer,* 130 Md. 351, 361-363.

The analogy in the application of a statute of limitations to actions at law to suits in equity early caused the period of limitations created by statute to be thus enforced, under similar circumstances, by the chancellor with this difference. At law the defense of the statute was not favored, and was the personal privilege of the defendant, and so, to be available, the statute had to be pleaded. In equity, however, the prevailing force of the principle, compactly expressed in the maxim *vigilantibus non dormientibus aequitas subvenit,* will cause the dismissal of any suit when it appears from the allegations of the proceedings that the equitable titles to real estate and equitable personal claims would be barred by the application of the statutory period, unless such facts and circumstances should appear in the same pleading as would remove the bar or make its enforcement inequitable. *Belt v. Bowie,* 65 Md. 350, 355 (mortgage barred by limitations of over twenty years). Unless, therefore, there be alleged unusual conditions or extraordinary circumstances which would make it inequitable for the chancellor to allow the prosecution of a suit within a shorter period than that limited by the statute, a mere delay for less than the time fixed by the analogous statute of limitations will not necessarily bar the suit in equity. 1 *Pomeroy's Equity Juris.* (4th Ed.), secs. 418, 419, 1440 (19), 1441 (20), and *infra.*

Now the bill of complaint at bar discloses that the breach of the covenant began about the first day of April, 1922, and

continued until the beginning of these proceedings on April 30th, 1927. Thus it appears that, out of the ten years during which the covenant was to be effective, the covenantor had continuously broken his contract during the period of five years and one month next preceding the suit. It is the appellant's contention that this unexplained delay makes the bill of complaint bad on demurrer.

The first difficulty with this position is that the contract is a specialty, and so limitations could not operate as a bar to an action at law for any breach of covenant until twelve years had run. Code, art. 57, sec. 3; *Hartle v. Schwartze,* 3 Md. 366; *Hagerty v. Mann,* 56 Md. 522, 528. Since the bill of complaint showed that this length of time had not elapsed, the claim growing out of the broken covenant was not a stale demand, and hence there was no occasion for the pleader to set out any circumstances in explanation of the delay. *Supra.* Moreover, it is not stated when the complainants acquired knowledge of the covenantor's wrongful conduct, but it is asserted that, through a conspiracy between the covenantor and some of his former servants, a competitive corporation was formed for the express purpose of deceiving the covenantees by concealing from them the breach of the contract. If this situation permits any inference in favor of the wrongdoer, it could go no further than to assume that the covenantees had knowledge of the covenantor's violation of his contract for a period of one month beyond five years. If this assumption be made, there is nothing to indicate that the forbearance earlier to proceed at law or in equity worked to the prejudice of the covenantor. His initial refusal to abide by his contract was of his own choosing, and his persistence in his course was according to his original design. Nor was the covenantor acting under the mistaken belief that he was lawfully exercising his own rights; but, fully knowing his own obligation and the rights of the covenantees, he repudiated his contractual obligation in pursuance of a preconceived plan to deprive the covenantees of their rights. If a prejudicial change in the covenantor's position was wrought, it was because he voluntarily and not innocently shifted from

a keeper to a violator of his express covenant without any default in duty to him by his covenantees. In so acting the appellant assumed every chance involved in such conduct, and is bold to ask for inferences to be made in his favor so as to supply the absence of facts which would support an equitable defense. It does not appear from the complaint that there could have been any reason for the covenantees to believe that the continuous invasion of their rights by the covenantor was because he mistakenly conceived himself to be acting lawfully, and hence the covenantees were under no duty to protest to the covenantor against his actions; and, subject to any statute of limitations, the covenantees could assert their rights against the conscious wrongdoer by legal proceedings at any time most convenient to themselves. *Demuth v. Old Town Bank,* 85 Md. 315, 326-328; *Blondell v. Consol. Gas Co.,* 89 Md. 732, 749; *Hopper v. Brodie,* 134 Md. 299, 304; *Nudd v. Powers,* 136 Mass. 273, 277, 278; *Galway v. Metropolitan Elec. Ry. Co.,* 128 N. Y. 132; *Wilmot v. Barber* (1880), 25 Ch. Div. 96, 105, 106; *Russell v. Watts* (1883), 25 Ch. Div. 559, 576, 585, 586; *Proctor v. Bemis* (1887), 36 Ch. Div. 740, 765, 766; *De Bussche v. Alt* (1878), 8 Ch. Div. 286, 314; *Archbold v. Scully* (1861), 9 H. L. Cas. 360, 383; 13 *Halbury's Laws of England,* "Equity," sec. 203, p. 168.

In this connection it is important to bear in mind that the facts admitted by the demurrer show a breach of covenant *de die in diem,* and on the happening of any breach the covenantees had a right of action, no matter the number of preceding breaches, as each successive breach in the course of the continuing or recurring breaches was constantly creating fresh causes of action. The covenantees owed no duty to the covenantor to sue at law or to enjoin him in equity. but the covenantor's obligation was continuous throughout the entire period of ten years from June 1st, 1921. Furthermore, the right of the covenantees to have this obligation performed and enforced at any time during this period was not an equitable claim or demand, but a legal right by virtue of an express and subsisting covenant. The legal nature of the

right which the appellees are seeking to enforce presents an important limitation upon the general rule as to the effect of acquiescence or delay. The exception is thus stated by the learned author of Pomeroy's Equity Jurisprudence: "This effect of delay is subject to the important limitation that it is properly confined to claims for purely equitable remedies to which the party has no strict legal right. When an injunction is asked in support of a strict legal right, the party is entitled to it if his legal right is established; mere delay and acquiescence will not, therefore, defeat the remedy, unless it has continued so long as to defeat the right itself." *Pomeroy's Equity Juris.* (4th Ed.), secs. 817, 1445 (24), 1951 (537). See also 13 *Halsbury's Laws of England,* p. 168; *Phelps' Jurid. Eq.,* sec. 261, n. 354, sec. 272, n. 7, p. 372; *Fulwood v. Fulwood,* 9 Ch. Div. 176; *Menendez v. Holt,* 128 U. S. 514.

It may well be that on the proof the appellant will be able to establish laches or some other equitable defense; but, for the reasons we have stated, the bill of complaint requires an answer, after the amendments have been made that will be rendered necessary by the making of the Washington Restaurant a party defendant. The defect of nonjoinder was not pointed out in the argument below on demurrer, and the chancellor did not consider it in his opinion, so, while his ruling on the demurrer was correct on the question of laches, the case will have to be remanded to enable the bill to be amended and the Washington Restaurant made a party defendant.

> *Under section 42 of article 5 of the Code, cause remanded for further proceedings in accordance with this opinion, the costs to abide the result below.*