**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 14-1794**

DAVE & BUSTER'S, INC.,

Plaintiff – Appellant,

v.

WHITE FLINT MALL, LLLP, f/k/a White Flint Limited Partnership,

Defendant – Appellee.

Appeal from the United States District Court for the District of Maryland, at Greenbelt.  Roger W. Titus, Senior District Judge. (8:13-cv-03390-RWT)

Argued:  May 12, 2015                    Decided:  June 11, 2015

Before WILKINSON, AGEE, and WYNN, Circuit Judges.

Affirmed by unpublished opinion.  Judge Wilkinson wrote the majority opinion, in which Judge Agee joined.  Judge Wynn wrote a dissenting opinion.

**ARGUED**: Edward Smith Scheideman, III, DLA PIPER LLP (US), Washington, D.C., for Appellant.  Albert David Brault, BRAULT & GRAHAM, LLC, Rockville, Maryland, for Appellee.  **ON BRIEF**: Paul D. Schmitt, DLA PIPER LLP (US), Washington, D.C., for Appellant. James M. Brault, BRAULT & GRAHAM, LLC, Rockville, Maryland, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

WILKINSON, Circuit Judge:

This case arises from a Landlord-Tenant dispute at White Flint Mall in Montgomery County, Maryland. Landlord White Flint Mall sought to terminate its lease agreement with Tenant Dave & Buster's in 2012 in light of a prior and ongoing violation of the radius restriction clause, which prohibited Dave & Buster's from operating a competing facility within the nearby geographic area. Dave & Buster's sought a declaratory judgment that the termination was time-barred by the statute of limitations and equitable relief in the form of specific performance of the agreement between the parties. The district court granted summary judgment for White Flint, finding that Dave & Buster's had violated the radius restriction clause and that White Flint's termination was therefore lawful, and not time-barred or waived. Dave & Buster's now appeals raising numerous arguments. Because those arguments all seek to overlook the agreement between the parties, we now affirm.

I.

In 1995, Dave & Buster's entered into a lease agreement with White Flint to open an entertainment-recreation-amusement complex in the White Flint Mall in Montgomery County, Maryland. The Lease was to last for a term of twenty years, with a right to extend for three successive periods of five years. Included in the provisions of the agreement was a radius restriction

2

clause, in which Dave & Buster's agreed to refrain from operating a competing facility under the Dave & Buster's Trade Name within a given radius area. See J.A. 52 (Section 11.3).

At some point prior to April 2006, however, Dave & Buster's acquired a former Jillian's location, which it rebranded and began operating as Dave & Buster's Grand Sports Café in the Arundel Mills Mall in Anne Arundel County, Maryland. On April 13, 2006, White Flint Mall notified Dave & Buster's that its operation of the Arundel Mills Mall location rendered it in violation of the radius restriction clause in the 1995 Lease. Although the map of the geographic area covered by the radius restriction clause is not included in the record before this court, neither party contests that the Arundel Mills Mall location is within the covered area.

White Flint noted that out of "deference to the longstanding, mutually beneficial relationship between the parties," the company had "elected not to formally place Dave & Buster's in default under the Lease" even though "the Arundel Mills situation constitute[d] a significant violation of the Lease." J.A. 130. The company did, however, include in the letter that "the Landlord reserves all of its rights under the Lease and at law to enforce the terms of the Lease." Id. Following this letter, both parties continued to engage in the usual course of business under the Lease.

3

On September 5, 2012, however, in connection with redevelopment efforts at White Flint Mall, White Flint provided Dave & Buster's with formal notice demanding the company cure the violation of the radius restriction clause within 30 days or the landlord would proceed to exercise its rights under the contract. After the 30 day period had passed, on October 9, 2012 White Flint notified Dave & Buster's that it had elected to exercise its right to terminate the Lease under Section 18.1(c) effective as of December 31, 2012. Id. at 134. Section 18.1(c) allows the Landlord to terminate the Lease with 10 days' notice in the event that the Tenant was in default in the performance of any of its covenants or agreements (other than payment of rent) for a period of 30 days. Id. at 61.

Dave & Buster's continued to operate and pay rent while the parties attempted to negotiate a resolution to the dispute. The discussions did not result in a satisfactory outcome and on October 17, 2013, White Flint sent a letter to Dave & Buster's stating that it was "no longer willing to refrain from enforcing its right to possession of the Premises" and requesting Dave & Buster's vacate the property by the end of November. Id. at 139.

On November 14, 2013, Dave & Buster's initiated this lawsuit in the district of Maryland seeking declaratory and injunctive relief. The Complaint pled three counts. It sought a declaratory judgment on whether White Flint's claim of breach of

4

contract was time-barred by the statute of limitations, requested specific performance of the Lease and a preliminary injunction to that effect, and asserted breach of the implied covenant of good faith and fair dealing. White Flint in response moved to dismiss, or in the alternative for summary judgment. Dave & Buster's crossed moved for summary judgment only on the issue of the statute of limitations.

The district court, after a hearing, granted partial summary judgment to White Flint on March 24, 2014 with regard to Count One, finding the company's breach of contract claim was not precluded by the statute of limitations or any theory of waiver and that the radius restriction clause was enforceable and breached by Dave & Buster's. It further dismissed Dave & Buster's request for a preliminary injunction that would enable it to continue operation at White Flint Mall notwithstanding the radius restriction clause. Further, the court rejected any claim that White Flint had breached an implied covenant of good faith and fair dealing. On July 22, 2014, the court dismissed the outstanding claims, finding the Lease properly terminated, and ruled on a counterclaim for possession of the property filed by White Flint in answer to the initial Complaint, awarding possession of the premises to White Flint.

On July 29, 2014, Dave & Buster's filed a Motion to Alter or Amend a Judgment arguing that the district court erroneously

5

stated that it had "abandoned any claim for damages arising out of any violation of the express terms of the Lease between the parties." Id. at 418. The district court denied the motion on August 8, 2014. Dave & Buster's now appeals.

## II.

### A.

Dave & Buster's primary contention is that the statute of limitations has run on White Flint's claim for breach of contract. The company argues that the district court erred when it refused a declaratory judgment on the question and granted summary judgment for White Flint. We disagree. Because Dave & Buster's actively continued to breach a contract that was still valid and in effect, White Flint's action did not run afoul of the statute of limitations.

Under Maryland law, which governs the statute of limitations question, a civil action "shall be filed within three years from the date it accrues unless another provision of the Code provides a different period of time within which an action shall be commenced." MD. CODE ANN., CTS. & JUD. PROC. § 5-101. Maryland courts construe the statute of limitations strictly. See Murphy v. Merzbacher, 697 A.2d 861, 865 (Md. 1997). Traditionally, the statute of limitations for a claim of breach of contract begins to run when the contract has been breached and "the breach was or should have been discovered."

6

*Jones v. Hyatt Ins. Agency, Inc.*, 741 A.2d 1099, 1104 (Md. 1999); see also *Mayor of Federalsburg v. Allied Contractors, Inc.*, 338 A.2d 275, 280 (Md. 1975) ("In contract cases, the general rule is that the period of limitations begins to run from the date of the breach.").

Here, there is no factual dispute surrounding the conduct constituting the breach -- the opening of a Dave & Buster's facility in Arundel Mills Mall in violation of Section 11.3 of the Lease – so the question of accrual is one of law that we decide de novo. See *Litz v. Md. Dep't of Env't.*, 76 A.3d 1076, 1086 (Md. 2013). Dave & Buster's argues that the facts before us amount to a single breach based on the acquisition and rebranding of the Arundel Mills location from which consequences continued to flow. We disagree. The situation here does not involve the "continuing effects of a single earlier act." *MacBride v. Pishvaian*, 937 A.2d 233, 240 (Md. 2007), overruled on other grounds by *Litz*, 76 A.3d at 1090 n.9.

The Lease between White Flint and Dave & Buster's imposed a continuing obligation on the latter not to operate any competing facilities within the radius restriction area so long as the contract continued to be valid and the parties continued to do business under its terms. The Maryland Court of Appeals has long accepted that certain covenants imposing ongoing negative obligations are covenants de die in diem and can be breached

7

continuously, or on a daily basis. Kaliopulus v. Lumm, 141 A. 440 (Md. 1928). Such is the case here and we find that an action for breach of contract accrued for so long as Dave & Buster's was in violation of the radius restriction clause through the operation of the Arundel Mills location. In a case of this nature, the statute of limitations may indeed operate to bar recovery of damages incurred more than three years prior to suit, but it does not render the present action for an equitable remedy time-barred. See Singer Co., Link Simulation Sys. Div. v. Baltimore Gas & Elec. Co., 558 A.2d 419, 425-26 (Md. 1989).

In Kaliopulus v. Lumm, the Court of Appeals of Maryland considered a question quite similar to the one before us today. See 141 A. at 442. Appellant James Kaliopulus sold his Hagerstown restaurant to Mr. and Mrs. Charles E. Lumm on the contractual condition that he would not "enter into, conduct, or finance any restaurant or dining room business within the corporate limits" of the city for a period of ten years. Id. When Kaliopulus breached this contractual obligation by financing a new restaurant on the very same street as the one he sold, the Court found that the specific relief sought by the buyers was not subject to the equitable doctrine of laches

despite the passage of five years time.[1] Id. at 445-46. Rather, the Court explained that continued operation of the competing restaurant constituted a breach de die in diem such that "each successive breach in the course of the continuing or recurring breaches was constantly creating fresh causes of action." Id. at 445.

Appellant makes much of the fact that this case was decided nearly a century ago and concerned the equitable doctrine of laches rather that the statute of limitations, but we find that of no moment. The case remains good law and demonstrates that under Maryland law, the continued operation of a competing enterprise can constitute a continuous breach of a contractual obligation so long as the contract under which the obligation arose is valid and in effect. Furthermore, in 1989, the Court of Appeals underscored that "where a contract provides for continuing performance over a period of time, each successive breach of that obligation begins the running of the statute of limitations anew, with the result being that accrual occurs continuously." Singer, 558 A.2d at 426; see also Indian Territory Illuminating Oil Co. v. Rosamond, 120 P.2d 349, 352 (Okla. 1941) ("[T]he right to maintain an action for its breach

---

[1] The sale was executed pursuant to a specialty contract such that the applicable statute of limitations was twelve years. Kaliopulus, 141 A. at 445.

9

continues so long as the breach continues and plaintiff is damaged thereby. . . . The rule is that a breach of a continuing covenant gives rise to a cause of action each day the breach continues.") (rationale adopted by Court of Appeals of Maryland in Singer, 558 A.2d at 425).

It is not difficult to see why the resolution of the case at bar comports with Maryland law. Dave & Buster's was under a continuing obligation, so long as the Lease was valid and the parties continued to do business under its terms, to refrain from operating any competing facilities within the radius restriction area. It was not merely the opening of the facility, but its daily operation that constituted a continued breach of the agreed-to contract.

Furthermore, this finding also mirrors what Maryland courts have concluded in the tort context. The Court of Appeals has rejected a continuing breach theory where the grounds for tolling the statute of limitations were "ongoing adverse consequences" but not ongoing adverse conduct. Litz, 76 A.3d at 1089 (internal quotations omitted). What is at issue before this court is not merely adverse effects allegedly suffered by White Flint Mall but rather an adverse course of conduct that Dave & Buster's engaged in every day the competing facility was open for business as a challenger to the White Flint location.

10

We think it important to note, however, that Maryland's theory of continuing breach of contract is a limited one. Here, the party to the contract that committed the breach was subject to an ongoing obligation to refrain from certain conduct and repeatedly or continuously engaged in that very conduct while the contract remained in effect. We do not, however, read the Court of Appeals of Maryland to be endorsing a wide-reaching continuous breach exception to the statute of limitations. Statutes of limitations "represent a public policy about the privilege to litigate" and "find their justification in necessity and convenience . . . [in order to] spare the courts from litigation of stale claims." Chase Sec. Corp. v. Donaldson, 325 U.S. 304, 314 (1945). Here, the facts do not present a single, isolated breach. Every day that Dave & Buster's operated the Arundel Mills Mall facility in direct competition with the White Flint Mall location constituted a breach of the ongoing contract between the parties such that accrual of the statute of limitations began anew. Thus, we do not find the action for termination of the Lease by White Flint Mall to be time-barred by the statute of limitations.

B.

Dave & Buster's next contends that White Flint waived its right to termination of the Lease by continuing performance under the contract after learning of the breach. However, in its

11

April 2006 letter, White Flint notified Dave & Buster's that it believed the operation of the Arundel Mills location "constitute[d] a significant violation of the Lease" and "clearly advise[d] [Dave & Buster's] that the Landlord reserve[d] all of its rights under the Lease and at law to enforce the terms of the Lease." J.A. 130. In addition, the Lease agreement contains an express non-waiver provision. Because White Flint clearly and explicitly reserved its rights under the Lease, we find that there was no waiver and summary judgment was properly granted on this issue.

The Court of Appeals of Maryland defines waiver as "the intentional relinquishment of a known right, or such conduct as warrants an inference of the relinquishment of such right." Food Fair Stores, Inc. v. Blumberg, 200 A.2d 166, 172 (Md. 1964). Waiver "may result from an express agreement or be inferred from circumstances." Id.; see also John B. Robeson Assocs., Inc. v. Gardens of Faith, Inc., 172 A.2d 529, 533 (Md. 1961) ("There are few principles of contract law better established . . . than that a party to an executory bilateral contract, who keeps the same in existence after a known breach by the other party and accepts further performance from the party who has committed the breach, waives the breach.").

However, as the Court of Appeals has made clear, waiver is not always mandated in a situation where the parties continue to

12

do business.  To "avoid waiver, a party must assert[] his intention to retain the rights accruing to him as a result of said breach." Hovnanian Land Inv. Grp., LLC v. Annapolis Towne Centre at Parole, LLC, 25 A.3d 967, 980 n.17 (Md. 2011) (citing Pumphrey v. Pelton, 245 A.2d 301, 304 (Md. 1968)) (internal quotations omitted) (brackets in original). The intent to waive a contractual provision "must be clearly established and will not be inferred from equivocal acts or language." Myers v. Kayhoe, 892 A.2d 520, 531 (Md. 2006). Here, for the reasons noted above, the record is clear. In light of the undisputed material facts before us, no rational factfinder could find that White Flint intended to waive its right to enforce the terms of the Lease, including the non-waiver provision and the radius restriction clause.

Dave & Buster's argues that the continued performance under the contract constitutes a waiver of White Flint's rights to terminate the Lease for violation of the radius restriction clause. The continued acceptance of rent after the breach of a covenant may, in some cases, be considered evidence of intent to waive a breach of contract claim. See Chertkof v. Southland Corp., 371 A.2d 124, 127 (Md. 1977). However, it "does not establish waiver as a matter of law." Id. Maryland law "treat[s] the question of waiver of a breach by the acceptance of rent as

13

a matter of intent, which necessarily turns on the factual circumstances" of the case. Id.

In considering the factual circumstances here, it is important to reemphasize that the Lease agreement between White Flint and Dave & Buster's contains an express non-waiver provision. Section 20.3 of the contract states that "[f]ailure of either party to complain of any act or omission on the part of the other party, no matter how long the same may continue, shall not be deemed to be a waiver of said party of any of its rights hereunder." J.A. 66. As with any provision, "waiver of [the non-waiver] clause may be implied from the very actions which imply waiver of the condition precedent." Hovnanian, 25 A.3d at 985. However, to defeat summary judgment, Dave & Buster's would have had to produce evidence that White Flint intended to waive Section 20.3 in addition to the radius restriction clause. This it cannot do.

The evidence here is clear that White Flint intended to reserve its right to enforce the radius restriction clause. Although White Flint continued to accept rent from Dave & Buster's location at White Flint Mall, it plainly explained in the April 2006 letter that it was choosing not to pursue its remedies under the Lease at that time only out of "deference to the longstanding, mutually beneficial relationship between the parties." J.A. 130. It "clearly advise[d] [Dave & Buster's] that

14

the Landlord reserve[d] all of its rights under the Lease and at law to enforce the terms of the Lease." Id. Following this letter, Dave & Buster's was on notice that at any point in the future White Flint might seek to enforce the radius restriction clause with regard to the Arundel Mills location. Dave & Buster's took no action to conform its behavior to the terms of the contract for seven years, instead choosing to enjoy the benefits of operating both facilities. However, it also assumed the risks associated with that business decision, namely that White Flint could still elect to pursue its bargained-for remedies under the Lease.

In 2012, when White Flint did choose to terminate the Lease and resume possession of the property, the downside of Plaintiff's business decision came to pass. But that does not permit the courts to confer on Dave & Buster's a benefit that the contract did not provide. On the record here, there is no issue of triable fact such that a reasonable jury could conclude that the evidence "amount[s] to an understanding between the parties that the [radius restriction] condition would no longer be enforceable." Hovnanian, 25 A.3d at 984. Thus, summary judgment was properly granted on the question of waiver.[2]

---

[2] Our colleague in dissent argues that the facts here could amount to waiver, relying on asserted similarities between the facts at bar and those in Chertkof v. Southland Corp., 371 A.2d (Continued)

15

III.

A.

Dave & Buster's primary contentions in this action are procedural, namely that the statute of limitations bars White Flint's ability to terminate the contract and, in the alternative, that any claim for the breach of contract was waived. On the merits, Dave & Buster's also challenges the district court's grant of summary judgment for White Flint on the question of whether the radius restriction clause was enforceable and breached by Dave & Buster's.

The district court did not err when it granted summary judgment in White Flint's favor on the issue. We review a grant of summary judgment de novo. Nguyen v. CNA Corp., 44 F.3d 234, 236 (4th Cir. 1995). Summary judgment is proper where "there is no genuine dispute as to [any] issue of material fact." Id. at 236-37; see also FED. R. CIV. P. 56(a). The radius restriction clause at issue in this case is a straightforward restrictive

---

124 (Md. 1977). The Maryland Court of Appeals noted in Chertkof, however, one important difference between our case and theirs: the unilateral nature of the reservation of rights. It explained that "the inference of intent to waive, arising from the acceptance of rent, [can be] rebutted by the express agreement between the parties." Chertkof at 128. Such is the case here. The previously agreed-to express non-waiver clause combined with the express reservation of rights at the time of the breach provides clear and indisputable evidence that White Flint did not intend to waive the breach.

16

covenant of a kind often enforced by Maryland courts where there is a "significant economic purpose" to the covenant. See, e.g., Diamond Point Plaza Ltd. P'ship v. Wells Fargo Bank, N.A., 929 A.2d 932, 952 n.7 (Md. 2007) (noting that radius restriction clauses are "in the nature of restraints on trade and competition, which are to be narrowly construed" but are often upheld).

The language of the provision here is clear and unambiguous. Dave & Buster's was obligated "not to operate a restaurant-bar-entertainment-recreation-amusement complex under the Dave & Buster's Trade Name within the radius area." J.A. 52. It is undisputed that the Arundel Mills Dave & Buster's location was within the radius restriction area, and thus in violation of the provision. Furthermore, the language at issue is very similar to that which the Maryland Court of Appeals upheld in Diamond Point Plaza. See 929 A.2d at 950. As the Court observed, "it would seem clear that the purpose of the radius restriction was to protect the percentage rent by precluding competing operations within the same market area that might siphon sales." Id. at 952 n.7.

Both Dave & Buster's and White Flint are sophisticated business entities and radius restriction clauses are common in commercial leases. The significant economic purpose is self-evident here. The Lease is for the operation of a Dave &

17

Buster's facility in the White Flint Mall and provides White Flint with a percentage of the operation's sales. It does not require expert testimony to determine that another Dave & Buster's, which is a unique entertainment experience, operating nearby would affect the number of customers visiting the White Flint Mall location.

Dave & Buster's argues on appeal that the provision was unenforceable, but failed to brief the necessary facts to support such an allegation. "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Anderson v. Liberty Lobby, Inc., 447 U.S. 242, 249 (1986); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) (finding summary judgment proper against "a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case"). Here, Dave & Buster's cannot point to any genuine issues of fact that exist to support a finding that the clause lacked significant economic purpose, or was overly broad, or unduly burdensome. Thus, summary judgment was properly granted for White Flint.

B.

Dave & Buster's further argues that summary judgment was improperly granted because the parties had not been allowed to undertake discovery and relatedly, that the district court

abused its discretion in not granting Dave & Buster's Rule 56(d) request for discovery, which it filed as part of its motion for reconsideration. We address these two interconnected arguments in turn.

As a general matter, of course, summary judgment is to be "refused where the nonmoving party has not had the opportunity to discover information that is essential to his opposition." Harrods Ltd. v. Sixty Internet Domain Names, 302 F.3d 214, 244 (4th Cir. 2002) (quoting Anderson, 447 U.S. at 250 n.5). However, the party opposing summary judgment "cannot complain that summary judgment was granted without discovery unless that party ha[s] made an attempt to oppose the motion on the grounds that more time was needed for discovery . . . before the district court ruled." Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 961 (4th Cir. 1996).

Generally such an attempt is made through the filing of a Rule 56(d) affidavit that outlines the need for discovery and what additional facts litigants hope to uncover through discovery to properly defeat summary judgment. See id. Although this court has found that filing an affidavit is not a necessary condition of obtaining discovery prior to summary judgment, we have repeatedly "warned litigants that we 'place great weight on the [Rule 56] affidavit'" and that "'the failure to file an affidavit under [Rule 56] is itself sufficient grounds to reject

19

a claim that the opportunity for discovery was inadequate.'" Harrods Ltd., 302 F.3d at 244 (quoting Evans, 80 F.3d at 961). Dave & Buster's failed to make the case for why discovery was necessary prior to a grant of summary judgment. Dave & Buster's did not file a Rule 56(d) affidavit until April 4, 2014, almost two weeks after the district court granted summary judgment in White Flint's favor. J.A. 308-11.

In Harrods, this court found that where "the nonmoving party's objections before the district court served as the functional equivalent," a Rule 56(d) affidavit may not be necessary. Id. at 244-45 (internal quotations omitted) (quoting First Chicago Int'l v. United Exch. Co. Ltd., 836 F.2d 1375, 1380 (D.C. Cir. 1988)). But here, Dave & Buster's included nothing more than a conclusory statement at the end of its memorandum in opposition to summary judgment arguing that "further factual development of the record regarding the reasonableness of the radius restriction" was needed. J.A. 172.

This is not the equivalent of a Rule 56(d) affidavit, nor does it provide reasonable "notification and explanation" for why more time for discovery was necessary or what the parties intended to discover that was not yet in the record. Evans, 80 F.3d at 961; see also Harrods Ltd., 302 F.3d at 244 ("[R]eference to [Rule 56] and the need for additional discovery in a memorandum of law in opposition to a motion for summary

judgment is not an adequate substitute for a [Rule 56(d)] affidavit."). As explained above, the court properly granted summary judgment on the enforceability of the radius restriction clause given the record before it. Only after the court granted summary judgment for White Flint did Dave & Buster's file its Rule 56(d) affidavit. J.A. 308-11. This was too little, too late.

Secondly, we do not find the district court abused its discretion in denying Dave & Buster's request for discovery as part of its motion for reconsideration of the grant of summary judgment. It is within the district court's discretion to deny such a request for discovery where "the information sought would not by itself create a genuine issue of material fact sufficient for the nonmovant to survive summary judgment." Pisano v. Strach, 743 F.3d 927, 931 (4th Cir. 2014). What Dave & Buster's sought to prove through additional discovery was largely speculative as to any specific facts that might support a finding that the radius restriction clause was unenforceable. It was not an abuse of discretion to refuse to reconsider conclusions regarding summary judgment on the basis of only "vague assertions" about what possible facts might be discovered to support Dave & Buster's claim. Nguyen, 44 F.3d at 242.

In addition to its request for additional discovery, Dave & Buster's also included in its motion for reconsideration an argument that it had a right to cure under Section 18.1 of the Lease. It now argues that the district court erred when it denied the opportunity to cure and found the Lease was validly terminated. We disagree.

Section 18.1 of the Lease provides in relevant part that in the event of a default by Dave & Buster's in the performance of its covenants or agreements (other than payment of rent), the company would have thirty days after notice in writing of the default to cure. J.A. 61-62. In addition, where "there is a bona fide dispute . . . [Dave & Buster's would be able to] cure any default at any time prior to final adjudication by a court of competent jurisdiction," through the payment of monetary damages. Id. at 62-63.

The district court did not err in denying Dave & Buster's the opportunity to cure. Dave & Buster's chose not to cure following initial notice of default in 2006 or after subsequent notice that White Flint intended to pursue its bargained-for remedies under the Lease in 2012. By the time the company made the argument that it had a right to cure, the parties were months into litigation. White Flint had already elected to terminate the Lease, a decision which the district court upheld.

Furthermore, the language of the Lease itself makes clear that only where there is a "bona fide dispute" could Tenant cure at a point later than 30 days after notice of default. Here, however, the parties agree that the Arundel Mills location was in fact a violation of the terms of the Lease. In addition, the district judge had upheld the radius restriction clause as valid and found Dave & Buster's had defaulted on its obligation when it opened the Arundel Mills location. We do not think the mere fact of litigation is what the parties intended by "bona fide dispute." As such, we cannot find that the district court erred in refusing to allow Dave & Buster's to cure at the eleventh hour of litigation a violation that was over seven years in the making.

V.

We have reviewed the various claims pressed by Plaintiff and find no merit in them.[3] Dave & Buster's violated the radius restriction clause in its agreement with White Flint Mall and made the business decision that it was worth the risk to operate both facilities for as long as possible. When White Flint elected to pursue its properly-reserved rights under the

---

[3] We do not think the district court abused its discretion in denying Dave & Buster's Rule 59(e) Motion to Alter or Amend Judgment and we affirm its ruling that Dave & Buster's has abandoned any claim for damages arising out of a violation of the express terms of the Lease.

23

contract, the district court enforced the contract's terms as written. For the foregoing reasons, its judgment is affirmed.

<u>AFFIRMED</u>

WYNN, Circuit Judge, dissenting:

I agree with the majority's conclusion that the radius restriction is enforceable and that Dave & Buster's breached it. But I disagree with the majority's conclusion that "no rational factfinder could find that White Flint intended to waive its right to enforce the terms of the Lease." Ante at 13. I believe that a rational factfinder viewing all of the facts in the light most favorable to Dave & Buster's could determine that White Flint waived both the radius restriction and the non-waiver clause. I therefore respectfully dissent.

I.

To survive summary judgment, Dave & Buster's needed only to marshal evidence that would allow a rational factfinder to find that White Flint waived both the radius restriction and the non-waiver clause. See Hovnanian Land Inv. Grp., LLC v. Annapolis Towne Ctr. at Parole, LLC, 25 A.3d 967, 987 (Md. 2011); see also Smith v. Comair, Inc., 134 F.3d 254, 256 (4th Cir. 1998) (noting that we view the facts at summary judgment in the light most favorable to the nonmoving party). This it did. In reaching the opposite conclusion, the majority opinion oversimplifies Maryland's waiver inquiry by granting outsized importance to the fact that White Flint reserved its rights under the Lease and by failing to articulate why the same facts that could support

25

waiver of the radius restriction clause cannot also support waiver of the non-waiver clause.

A.

Under Maryland law, whether the continued acceptance of rent constitutes a waiver is a fact-intensive question of intent. See Chertkof v. Southland Corp., 371 A.2d 124, 127 (Md. 1977). The continued acceptance of rent does not constitute a waiver as a matter of law. Id. In a similar vein, a unilateral reservation of rights under a lease is not necessarily enforceable as a matter of law. See id. at 127-8. Chertkof is instructive in this regard.

Chertkof involved a commercial lease with a percentage-rent clause that guaranteed the lessor a certain percentage of the lessee's gross sales. 371 A.2d at 125. The lease also included a provision that required the original lessee to receive written approval before subleasing or assigning the lease to another party. Id. The lessee subleased and assigned the lease without first receiving written consent. Id. at 125-26. When the lessor discovered the assignment, it declared the lease "null and void and cancelled" due to the breach of the lease terms. Id. at 126. The lessor's agent also wrote a letter specifying that continued acceptance of rent should not be construed as a waiver. Id.

26

The trial court held that the lessee breached the lease provision requiring written consent. Id. at 126. But it also found, despite the lessor's relatively speedy filing of an ejectment action and its express statement disavowing waiver, that the lessor had waived its "right to a forfeiture of the estate granted by the lease." Id. at 127. The Maryland Court of Appeals affirmed based on the acceptance of rent and months-long negotiations for a new lease.

The facts of this case bear a more-than-passing resemblance to the Chertkof facts: (1) The Lease included a percentage rent clause, which gave White Flint an economic interest in Dave & Buster's performance, J.A. 33; (2) Dave & Buster's breached a lease provision designed to protect White Flint's economic interest; (3) White Flint promptly notified Dave & Buster's of the breach and unilaterally reserved its rights under the lease;[*] (4) White Flint continued to accept rent; and (5) White Flint engaged in months-long negotiations (October 2012–October 2013) with Dave & Buster's before threatening to take legal action unless Dave & Buster's vacated the premises. Indeed, the main difference between this case and Chertkof is the length of time

---

[*] White Flint's April 2006 letter was a unilateral reservation of its rights under the lease, and this reservation is quite distinct from the (waivable) non-waiver clause discussed below. "Had the reservation been the subject of express agreement, a different result might have obtained." Chertkof, 371 A.2d at 128.

27

between the initial notice of breach and the threat of legal action; instead of waiting months, White Flint waited more than six years. It is difficult to square Chertkof with the majority opinion's holding that no rational factfinder could find that White Flint waived the radius restriction.

B.

To survive summary judgment, Dave & Buster's must also show that White Flint waived the non-waiver clause. According to the majority, "This it cannot do." Ante at 14. Again, I disagree.

Maryland law provides that the waiver of a non-waiver clause "may be implied from the very actions which imply waiver of the condition precedent." Hovnanian Land Inv. Grp., 25 A.3d at 985. The non-waiver clause states that "[f]ailure of either party to complain of any act or omission on the part of the other party, no matter how long the same may continue, shall not be deemed to be a waiver of said party of any of its rights hereunder." J.A. 66. To demonstrate waiver of this non-waiver clause, Dave & Buster's need only put forward facts showing that White Flint waived some right by failing to complain. This it can do.

As the majority opinion observed, The Court of Appeals of Maryland defines waiver as "the intentional relinquishment of a known right, or such conduct as warrants an inference of the relinquishment of such right." Food Fair Stores, Inc. v.

28

Blumberg, 200 A.2d 166, 172 (Md. 1964). This precisely describes White Flint's (in)action when it chose not to complain about the radius restriction for more than six years. Accordingly, I cannot agree with the majority that no rational factfinder could find waiver of the non-waiver provision.

## II.

Both Dave & Buster's and White Flint made business decisions. Dave & Buster's made the business decision to breach the radius restriction. White Flint made the business decision to not enforce the radius restriction for more than six years. To be sure, these business decisions are subject to contractual agreement. But that contractual agreement is subject to Maryland law. If, for example, White Flint had not waited so long to enforce the radius restriction, perhaps my conclusion would be different. But because these facts, when taken in a light most favorable to Dave & Buster's, could support a rational factfinder's determination that White Flint waived both the radius restriction and the non-waiver clause, I respectfully dissent.